Good morning, everyone, and be seated. I'm very pleased that we shall start with an admission. Mr. Cohen, would you approach the podium, and Judge Clevenger, I invite you to make a motion. I move the admission to the bar of our court of Eric Ross Cohen, who is a member of the bar, and is in good standing in the highest court of the state of Delaware. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. I am qualified to make this declaration because Ross Cohen is currently my law clerk and has served in that position for the last year. He's about to leave and go off to private practice. We will miss him greatly. He has served with distinction and great skill, and it's been of great value to me and to the court. And so I thank him for his service, and I wish him the best in the future, and I hope that my colleagues will find it possible to grant this motion. Thank you. Judge Clevenger, the panel will vote on whether to accept the motion. What say you, Judge Chen? I'm also familiar with Mr. Cohen's credentials because I reviewed them when he applied to clerk for me a couple years ago, and he ultimately decided to go a different way. But I do know he has excellent credentials, and on the strength of Judge Clevenger's recommendation, I vote to raise approval. And I join the vote. Welcome to the bar of this court. Please approach the clerk to administer the oath. Thank you. Welcome to the bar. We look forward to seeing you in a more active role in the near future. Meanwhile, the best of everything to you. We shall proceed with the morning's arguments. The first argument this morning is number 16-2401, Ruffin against Shulkin. Good morning, Your Honors. Lynn Nooner of Simpson, Thatcher & Bartlett, with the privilege of representing Mr. Washington Ruffin as appellant in this appeal. Your Honors, there are two legal issues for your review in this matter. The first addresses whether the Veterans Court misunderstood the VCAA's statutory framework when it endorsed the VA's fundamentally flawed process here of penalizing a veteran, Mr. Ruffin, when the VA could not locate his service medical records. The second legal issue for this court is whether the Veterans Court adopted a non-rebuttable presumption against the delayed onset of hearing loss based on a 2006 Institute of Medicine panel opinion. The presumption, in our view, misinterprets legal precedents and statutes requiring consideration of medical and lay evidence. So you're saying that since the records couldn't be found, there is a presumption or an assumption that they had a certain content that would have supported Mr. Ruffin? Judge Newman, we are not even going that far. We are not asking for an affirmative presumption in our favor due to the absence of Mr. Ruffin's medical records. The Secretary would have you that we're asking for an affirmative presumption, but I'd like to be clear, we are not. We are simply asking for the negative presumption against Mr. Ruffin to be removed. Here, the records were regrettably lost. I will stipulate that as a result of Mr. Edelsheck's intervention at this medical examination in May of 1972. Which is not probative, right? Yes, Your Honor, that's right. They made an effort to look, and I suppose from their view, there's a presumption that there's nothing else there. And I suppose from your view as well, they've now twice gone back and looked and each time found one thing, right? That is true, both times. What are we to make of that? You're not arguing that there's a failure of the duty to assist? That's true. To be honest, I think that the Veterans Affairs at this point has satisfied their statutory compliance. We've received a certification and we are satisfied with that. This is not the first case in which we've dealt with the problem of absence of in-service medical records. And we've held that there isn't any presumption one way or the other, actually. Agreed. And so your view is that in this case, there seems to be some type of a presumption that's working against your client? Exactly, Judge Kleven. I don't quite understand what it is you want us to do. If we grant the fact that the duty to assist was satisfied, and it's an unfortunate case where the historic records, except for just the going into the service, are absent, we have a record that has facts in it. And the facts in it on both of the issues, both the hearing loss and the sleep issue, there seem to me to be data points that would support the result that you're appealing for. So I don't quite know what I'm supposed to help your side since this vacuum seems to exist, but the vacuum is seemingly irrelevant. Your Honor, I follow you completely. And the request for relief is a vacator of the Veterans Court's decision and a remand for due consideration of the medical and light evidence submitted by Mr. Ruffin, without the overlay of this categorical presumption against him that delayed onset of hearing loss cannot be established. And I will add to this that this Institute of Medical Opinion... Have we actually held that there isn't any such thing as a delayed onset of medical hearing loss? I thought I read cases that have dealt with that argument before, where the problem is that someone serves and is exposed to noise and that sort of thing, and then later on after their service, they say, well, my hearing loss began in service, but with no evidence of it occurring in service. Exactly. So Hensley did deal with this exact situation, and Jeandreau is an excellent post-Hensley decision applying it. And here is where it comes in directly for you on Mr. Ruffin's case. In Hensley, the Court said you cannot categorically reject delayed onset because there was a normal audiometric evaluation upon discharge. We do... Let's be certain we know where Hensley is a CABC opinion. Yes, Your Honor. That has never been adopted by this Court, right? That is true, Your Honor, but Jeandreau... I just want to make certain I understand the body of precedent that you're relying on. That's fair. Hensley is Veterans Court, but then Jeandreau, which is the one I referred to, which is the Federal Circuit 2007, which picks up the Hensley strain and says that lay evidence may be used to establish service connection, especially when the service medical records have not been found. I would submit that Jeandreau is the best decision in our favor, and what we are asking for here is a remand to allow due consideration of both the lay testimony submitted by Mr. Ruffin, his wife, and his son. But that testimony was considered already. Your Honor, it was accounted for, but then it was frankly disregarded, and I would submit that it was disregarded categorically on the basis, and you see this in the Veterans Court's opinion, that none of them were competent to establish causation. This is an indication, which there are data points later on after service when the veteran is examined and found not to have any hearing loss problems. That is absolutely true, but what you also... That's not helpful to your case. Not helpful, but not dispositive. There were audiograms in 1980 and 1998 and 1999, right? Yes, Judge Trent. Ultimately, in each of those post-service audiograms, it was found that his hearing was normal during those times. Normal, but trending in a normal... I guess the concern I have is you're here because you need to make a legal argument, right? That is true. You can't argue about the facts, and now here we are trying to locate where it is in the decisions where there is some kind of legal presumption that the veteran had no hearing loss during his time of service. I'll just tell you right now, when I looked at those decisions, I didn't see anywhere where, obviously, they didn't say anything like that, that they were making a legal presumption. Instead, what I saw was decision makers weighing all the various data points they had, including the lay testimony from Mr. Ruffin, Mr. Ruffin's wife, Mr. Ruffin's child, and ultimately concluding that there was no service connection for delayed hearing loss or for sleep apnea. So, I think what I need is some help from you to point me to something that can satisfy me that there was, in fact, an improper legal presumption applied against your client. Let me do that. I would appoint you to the special appendix, page 9, which is page 9 of the opinion by the Veterans Court, and then I would carry you over into 10, 11, and 12, and this is the heart of the analysis with respect to hearing loss and sleep apnea. With respect to hearing loss, what the Veterans Court does is say, here the examiner relied on the normal audiometric examinations that you referred to and the IOM opinion, which is this hefty document. This hefty document itself is not a single conclusion, and the CAVC courts have subsequently recognized that in 2016, subsequent to Mr. Ruffin's opinion. It actually says that there can be diminishment of hearing due to acoustical trauma during the service that is not recognized by the veteran, but only comes on later and is exacerbated by normal hearing. That, we say, is a contributing factor, but where, in this opinion, it is where the Court of Appeals for Veterans Claims says the court acknowledged the examiner relied on... Which page are we on now? Your Honor, I'm at Appendix 9 going into Appendix 10. In the last paragraph, in the second-to-last sentence of the hearing loss section, here the examiner reviewed the totality of the evidence. I'm sorry, we're not on the same page. I'm sorry. We're on... Right here at the bottom. The Appendix 10? Appendix 9 on the right. Yeah, those last few words she's just read. Sorry, if we're working from the special appendix, it's page 9, last paragraph, penultimate statement. Trying to understand what it is, you requested a remand for, I assume, additional evidence, which would be entirely contemporaneous family evidence. You mentioned that the child said he was becoming hard of hearing. But that's the purpose of the remand, and the theory is that that would then outweigh and overcome the measurements of the audiologist. Your Honor, the answer to your question is yes, in part, and then there is more. So yes, we would submit updated audiological and lay evidence with respect to Mr. Ruffin's symptoms and the connection to his service. And the more is that we would like this Court to say that the Veterans Court and the Board cannot give prescriptive weight, categorical weight, that basically disqualifies lay evidence and post-service medical testimony, like here from Dr. Richard Deboe, because that is an inappropriate presumption to attach to the IOM opinion. And I just want to get back to your opinion, your question, Judge Chen, which is when you look at this sentence, here the examiner reviewed the totality of the evidence, which included 1998 and 1999 audiogram results and the IOM's panel's conclusion regarding delayed onset hearing loss. I would submit to you that 1 plus 2 equals disqualification. If you take a normal audiometric and the way the examiner treated this IOM opinion, which is that delayed onset of hearing loss is a myth, then the result is disqualification. You will never be able to establish service connection. Why? Because here the lay evidence, which is the only thing that is going to be insightful as to the in-service period, was disqualified as incompetent. And then the post-service medical diagnosis from Dr. Deboe was attached little weight because it was, quote, inconclusive, whereas Dr. Deboe stated that Mr. Ruffin was exposed to larks and artillery, very high noise, acoustical trauma, and in his view it could have contributed to this delayed onset of hearing loss. The same happens when you look at the lay evidence section of the sleep apnea on page 11, where the lay testimony is again disqualified in the final paragraph because why? Mr. Ruffin is not competent to opine. And on page 12, he and his family do not have the medical knowledge or training that would allow them to attribute obstructive sleep apnea to military service. In each case in violation of because it wasn't, quote, competent. And to us, that is simply an impermissible legal construct. When you put it together with a presumption from the IOM opinion that delayed hearing loss cannot be found, is not medically supported, no veteran can win. Mr. Ruffin was effectively prohibited from demonstrating a service connection for either his hearing loss, certainly with the IOM opinion severely weighting down the other side, but also with respect to sleep apnea. Okay. Let's hear from the VA. Thank you very much. Mr. Adels. May it please the court and good morning. Mr. Ruffin advances fact-intensive claims that are beyond the narrow jurisdiction of this court. The Veterans Court held that the board properly relied on medical opinions, which in turn were based upon the available medical records and scientific knowledge. Those available medical records and medical opinions affirmatively showed that Mr. Ruffin's service most likely was not the cause of his hearing and sleep apnea conditions. But on appeal, Mr. Ruffin has argued to this court that the Veterans Court punished him or penalized him or created a non-rebuttable presumption against him. All this because he still had a statutory burden of supporting his claims, even though some of his medical records, unfortunately, went missing. But the Veterans Court did not punish Mr. Ruffin by following the statute, 38 U.S.C. 5107a, because the Veterans Court did not draw any inference whatsoever from the missing records. It decided this case based on the available records and the available medical opinions. Now, with respect to the Institute of Medicine, it's been called a study, but it's really more of a treatise. The Institute of Medicine is part of the National Academies of Sciences, and this book called Noise and Military Service from the Institute of Medicine, it surveys all of the available medical studies that pertain to hearing loss. And what has been the characterization of this treatise by the appellant is not accurate. There is no presumption against delayed onset hearing loss. What the Institute of Medicine found is that based on the state of scientific knowledge as it stands today, if the veteran experiences delayed onset hearing loss from within a few years of an acoustic trauma, there may be a connection. But, and this is the key point that was relied upon by the medical doctors who examined Mr. Ruffin, if the alleged delayed onset is a prolonged period of time, many, many years, in this case, more than two decades, the Institute of Medicine concluded that the science says it's highly unlikely that there's a connection to that acoustic trauma. Now, these are all highly fact-intensive issues that were properly resolved at the board level and ultimately reviewed by the Veterans Court. And this court has held in Cromer as well as in Jandrew that the court cannot modify a burden of supporting a claim that's imposed by statute when Congress itself did not provide for relief. Well, let me just straighten out. One of the reasons this case is here is if in fact, as a matter of procedural law, there was an error in refusing to consider lay evidence, this is that warrants review, not as to how it would all come out. But one of the points that has been presented to us is that there was a significant error of procedural law. That is the argument, Your Honor, but that is a counterfactual argument because the board specifically... Perhaps the answer is, but the issue is a matter of law. And I think it's not disputed that that would be incompetent. Some of it, Your Honor. The lay evidence that was submitted on several issues was considered as competent before the board. There was lay evidence about Mr. Ruffin's commanding amphibious vehicles, which were very noisy. That was credited. No one disputes that he was around loud vehicles while in service. Also, the lay evidence that was presented concerning his alleged hearing symptoms, he provided testimony on that as well as family members. And that evidence was considered by the board and weighed along with all the other evidence. The only matter that Mr. Ruffin was not competent to testify to was causation, that his hearing loss in 1999 was caused by a loud event or events back in the mid-1970s. And that's something that science has to answer. And ultimately, the question of whether the lay evidence is competent... Hasn't our president previously addressed the causation issue on lay evidence? Yes, indeed, Your Honor. This question of whether lay evidence is competent to address a particular fact issue, that is beyond the jurisdiction of the court as this court held in Jandrew. Their best case holds that the court cannot consider whether Mr. Ruffin's lay testimony was competent... On causation. On causation. But it is competent when it comes to reporting whether there was hearing loss or whether the person kept waking up in the middle of the night. Yes, and... Those observations, these witnesses are competent to testify to. Absolutely, and the board considered that evidence and weighed it with everything else. The requested remand to reconsider that which was already considered and weighed the first time, we respectfully submit it would be pointless. Because the Veterans Court properly resolved the factual issues in this case, the court should dismiss for lack of jurisdiction or alternatively affirm the judgment below. Thank you. Do you have any questions? No, I have no questions. Thank you. Okay, Ms. Neuner, you have some rebuttal time. Two minutes. Thank you. Your Honors, what the Secretary just said is that the only matter that Mr. Ruffin was not allowed to testify to is causation, and he further said that is something the medical evidence must answer. Therein lies the rub. Under Jan Rowe, this Federal Circuit said when especially the in-service medical records are missing, lay evidence has to be given due consideration. And I take your point, Judge Chen, that it is being given due consideration, I would concede, as to the observance of symptoms. But where it is being categorically rejected under the portions of the Veterans Court opinion I pointed you to is with respect to attribution or causation. Now, the conundrum that leaves the appellant in is that he would never be able to satisfy a service connection, truly never be able to, because his lay testimony is being rejected. Well, if the facts were a little different, if, for example, the that he was exposed to in service were of a particular kind, it might well be that doctors would say, yes, if you were exposed to shells going off, you were the guy on the – put the shell into the cannon, and for two or three years in a row, you had thousands and thousands of shots. Well, they might say that's sufficient. We believe that that type of exposure can be causation. I mean, I think one of the problems, from my perspective, that you may have here is that the noise exposures to which your client was exposed in service weren't of the kind I'm talking about, shells. It was machines and motors and that sort of thing, a lesser possibility of injury to hearing. I don't agree with your proposition that the kind of lay evidence that is pertinent can't be successful for a veteran, depending on what the evidence is. Well, my submission is that Mr. Ruffin did testify in person at the board hearing in 2012 that he was exposed continuously to the LARCs, the Lighter Amphibious Resupply Cargo Vehicles, that the noise was deafening, that he experienced problems hearing while in service. It was observed by others with whom he served. And Dr. Deboe's report, which is found at page 109 of the appendix, says he was exposed to high-intensity noise levels, and this could implicate that contributing factor to his hearing loss. When you put that together with the IOM opinion at page 204, which says that veterans may not experience the hearing loss while it's happening, but it can happen later on, and only through the exacerbation with aging do they realize, in retrospect, that the trauma led to it. You disagree with your adversary's characterization of the IOM? Oh, it's the CAVC. Now in 2016, the CAVC has three different times sent back decisions because the examiners relied only on page 47 of the IOM, which is skeptical of delayed onset, and didn't look at page 204, which is favorable to veterans, and saying that in-service acoustical trauma can lead to exacerbation later on, and the veteran wouldn't even know that. That's the problem. We have an early treatment by the examiners of the IOM opinion, which was one note only, delayed onset is not medically supported, and the CAVC has now held in the subsequent intervening years that you cannot look at that one page of the IOM opinion. This information you're giving us right now was not in the briefs, right? No, your honor, and I respect that, but what I'm trying to make the point is that what is in my opinion was in fact treated as a categorical presumption against. The concern here is, I mean, now we're into the facts, right? 1980 audiogram, 1998 audiogram, 1999 audiogram. They all said his hearing was normal. Now we have to figure out, was there an actual legal presumption applied against your client due to a loss of service medical records? You've pointed us to a particular sentence in the veterans court's opinion, but if we conclude that whatever that sentence says doesn't represent a legal presumption being applied against your client adversely, then that's us at the end of the case. It is, but I would hope it would not be, and the reason why is because I don't think the CAVC or the examiners ever set out to say, I am now about to commit a legal impropriety. I am now about to effectuate a presumption against the veteran, but make no mistake, if you look at the audiologist report at appendix 122, combine that with the veterans court opinion, you are in fact getting a presumption that this IOM opinion forecloses delayed onset when you put it together with normal audiometric findings. I appreciate Judge Chen. Anytime we talk about evidentiary penalties, it starts to sound facty. I accept that you would be reacting against that, but that doesn't change the legal complexion of what's happening, which is evidentiary penalties and non-rebuttable presumptions. While they sound in fact, they amount to a legal hurdle that is not acceptable when put together with the Veterans Claims Assistant Act and the subsequent regulations. I see my time is way over. I really do appreciate your time on behalf of Mr. Ruffin. No, well, this is important. Thank you. Thank you both for the argument. The case is taken under submission.